IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MICHAEL D. ROGERS, )
)
Plaintiff, )
)
)
)
v. ) 1:13CV209
)
KRISTIE STANBACK, SORRELL )
SAUNDERS, JOEL HERRON, )
ROBERT C. LEWIS, LARRY )
DUNSTON and FAY LASSITER, )
)
Defendants. )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the court on Plaintiff's motion for a temporary restraining order. (Docket Entry 14.) Defendants have filed a response to the motion and the matter is ripe for disposition. For the reasons that follow, the Court will recommend that the motion be denied.[1]

Plaintiff Michael Rogers, a North Carolina state prisoner proceeding *pro se*, filed this action on March 5, 2013. (Docket Entry 2.) On August 23, 2013, Plaintiff filed an amended complaint. (Docket Entry 11.) In his complaint, Plaintiff asserts that he is an adherent of the Nation of Islam. He affirmatively states that he is not a member of the Nations of Gods and Earth ("NGE"), an organization which has been identified as a Security Threat Group ("STG"), or gang, by the North Carolina Department of Public Safety, Division of Adult

---

[1] Pursuant to 28 U.S.C. § 636(b)(1), United States Magistrate Judges may not dispose of motions for injunctive relief but may enter recommendations as to such motions.

Correction ("NCDPS"). (Am. Compl. ¶¶ 2, 6.) Plaintiff alleges that he has been wrongfully classified as an STG member. (*Id.* ¶ 9.)

Plaintiff alleges that as an adherent of the Nation of Islam, he has been denied access to the newspaper *The Final Call*, which he contends is religious in nature. (*Id.* ¶¶ 19-30.) He also argues that NCDPS fails to provide constitutionally adequate programs and services for adherents of the Nation of Islam. (*Id.* ¶ 13.) Plaintiff seeks a declaratory judgment that the withholding of The Final Call is unconstitutional, that the failure to provide Nation of Islam adherents with adequate religious programs and services is unconstitutional, that failure to remove Plaintiff from STG status is unconstitutional, and that failure to remove the NGE from categorization as an STG is unconstitutional. Plaintiff also seeks injunctive relief, compensatory damages and $500,000 in punitive damages. (*Id.* at 4, 7.)

In the present motion, filed on August 30, 2013, Plaintiff alleges that officers searched his cell on August 18, 2013 and confiscated a photocopy of the Nation of Gods and Earth flag, which Plaintiff contends is an exhibit in this case. (Motion for Temp. Restraining Order ¶ 4, Docket Entry 14.) He claims that officers told him that "Tabor Correctional Institution has zero tolerance for STG material and [he] will be served an infraction of an A-14 [offense] for possessing said material with definite segregation time." (*Id.* ¶ 6.) Plaintiff contends that for officers '[t]o confiscate anything [he] deems relevant in the presentment of this case and to then prosecute [him] in disciplinary hearing[s] at this time for anything remotely linked to this case is violating [his] rights." (*Id.* ¶ 10.) Plaintiff further contends that he only possessed the NGE material in order to prove his complaint. (*Id.* ¶ 12.)

2

The substantive standard for granting either a temporary restraining order or a preliminary injunction is the same. *See e.g., United States Dept. of Labor v. Wolf Run Mining Co.*, 452 F.3d 275, 281 n. 1 (4th Cir. 2006). Temporary restraining orders are governed by Rule 65 of the Federal Rules of Civil Procedure, which provides that a temporary restraining order shall not issue in the absence of "specific facts [which] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party may be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A).[2] The United States Supreme Court has stated that to obtain a temporary restraining order or a preliminary injunction, a movant must establish: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Federal Election Comm.*, 575 F.3d 342, 345 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010).[3] Injunctive relief, such as the issuance of a preliminary injunction, is an extraordinary remedy that may be awarded only upon a clear showing that the plaintiff is entitled to such relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *see also MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (a preliminary injunction is an "extraordinary remed[y] involving the

---

[2] Temporary restraining orders, which may be issued without notice to the adverse party, are limited in duration to 14 days plus one 14-day extension. Fed. R. Civ. P. 65(b)(2).

[3] The original decision in *Real Truth* was vacated by the Supreme Court for further consideration in light of *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010). However, the Fourth Circuit reissued its opinion on Parts I and II of its earlier opinion in the case, 575 F.3d at 345-47, stating the facts and articulating the standard for issuance of a preliminary injunction, before remanding it to the district court for consideration in light of *Citizens United*. *See The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 607 F.3d 355 (4th Cir. 2010).

exercise of very far-reaching power to be granted only sparingly and in limited circumstances.").

Plaintiff asserts claims that his rights under the First Amendment, Fourth Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") are being violated by the prohibition against inmates' possession of the Final Call and by the failure of the prison to provide programs and chaplain services devoted to the Nation of Islam. The RLUIPA prohibits a state or federal government from placing any substantial burden on religious exercise by persons residing in, or confined to an institution, except to further compelling governmental interests. It does not elevate accommodation of religious observances over institutional needs to maintain order and safety. 42 U.S.C. § 2000cc-1.

The Free Exercise Clause of the First Amendment guarantees inmates a "reasonable opportunity" to practice their religion. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A prisoner, however does not enjoy the same full range of freedoms as those not incarcerated; rather, state action violates a prisoner's constitutional rights if it burdens a prisoner's religious rights and is not reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987). In determining whether a reasonable relationship exists, the Supreme Court usually considers four factors: (1) whether there is a "valid, rational connection" between the restriction and a legitimate governmental interest; (2) whether alternatives for exercising the right remain to the prisoner; (3) what effect accommodation of the right will have on prison administration; and (4) whether there are other ways that prison officials can achieve the same goals without encroaching on the right. *Id.*

4

Here, Plaintiff has failed to make the requisite showing for preliminary injunctive relief. At this stage of the proceedings, the case is in its early stages and no dispositive motions have been filed. Thus, Plaintiff's claims under the First and Fourth Amendments and the RLUIPA remain theoretically plausible. Defendants, however, also argue that the other factors of the preliminary injunctive relief standard preclude granting of motion Plaintiff's motion.[4]

Plaintiff has not shown that he will suffer irreparable harm if an injunction or TRO is not issued. He argues only that his case is "handicapped" if he cannot possess the material he intends to use in this case. However, save for his conclusory allegations, Plaintiff has made no showing as to any irreparable harm he will suffer by not being able to possess materials which have been identified by the NCDPS as security threats. Indeed, Plaintiff has not shown how his possession of the photocopy of the NGE flag would further his case. Plaintiff has also not shown that he has been harmed by a "threat" of discipline; there is no allegation that Plaintiff was in fact charged or disciplined in any way for the possession of the material seized.

Further, Plaintiff has not shown that the balance of equities tips in his favor. The Fourth Circuit has long recognized the "wide ranging deference" that the judiciary must

---

[4] Additionally, while Plaintiff claims that he has an unlimited right to possess any article he deems relevant to this case, he has provided no factual or legal foundation for his argument. A prisoner cannot establish a right to possess any material he wants simply by filing a federal lawsuit. Moreover, a plaintiff lacks standing in a section 1983 action where he alleges that inmates generally are treated in contravention to the Constitution, but not that the plaintiff himself was so treated. *See Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (prisoner "does not allege an injury to himself, and [therefore] does not have standing"); *see also Allen v. Wright*, 468 U.S. 737 (1984) (discussion of standing requirements). Here, because Plaintiff affirmatively alleges that he is not a member of a gang, and specifically not an active member of the NGE, he lacks standing to assert that he has a constitutional right to possess NGE material.

show prison administrators with regard to matters within their discretion. *See Wetzel v. Edwards*, 635 F. 2d 283, 288 (4th Cir. 1980) (discussing the complexities of running a prison and the reluctance of federal courts to interfere in the decision-making of prison officials). The balance of equities in this situation does not favor Plaintiff.

Finally, Plaintiff has not shown that an injunction is in the public interest. Generally, the court should "afford proper deference and flexibility to state officials trying to manage a volatile environment[.]" *Sandlin v. Conner*, 515 U.S. 472, 483 (1995). When dealing with prisoner cases, federal courts must accord wide-ranging deference to correctional professionals in the adoption and execution of policies for the operation of penal institutions. *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986) (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). Accordingly, prison administrators have wide discretion in the adoption and execution of policies and practices that are needed to preserve internal order and to maintain institutional security. *Beard v. Banks*, 548 U.S. 521, 528 (2006). This Court cannot conclude that the public interest would be served by court involvement in decisions made by prison administrators regarding materials deemed to be security threats. To the extent that Plaintiff is contending that the public interest in ensuring prison safety and order is outweighed by public interest in personal religious practices by prisoners, this Court rejects this argument under the circumstances presented here. Indeed, Plaintiff has not shown that his right to possess material which has been identified as gang-related is of greater service to the public good than NCDPS's restrictions relating to such material.

Given the record at this stage of the litigation, the issuance of an injunction ordering Defendants to return any confiscated material to Plaintiff and ordering Defendants to not

discipline Plaintiff in the future would be inappropriate at this time. Plaintiff has not met his burden of persuading the court "by a clear showing" that he is entitled to the "extraordinary and drastic remedy" of a temporary restraining order or preliminary injunction. *See Mazurek*, 520 U.S. at 972.

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction (Docket Entry 14) be **DENIED**.

_____
Joe L. Webster
United States Magistrate Judge

December 19, 2013
Durham, North Carolina